IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERTO REYES, | : | |
| Petitioner, | : | 1:14-cv-1065 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| WARDEN D. ZICKEFOOSE, | : | |
| Respondent. | : | |

## MEMORANDUM

**January 4, 2016**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner, Roberto Reyes ("Petitioner" or "Reyes"), an inmate incarcerated at the United States Penitentiary at Allenwood, White Deer, Pennsylvania.  He contends that his due process rights were violated during the course of a prison disciplinary process conducted at the Federal Correctional Complex in Forrest City, Arkansas ("FCC-Forrest City").  (Doc. 1). The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.    BACKGROUND

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step

requires filing an incident report and conducting an investigation pursuant to 28

C.F.R. § 541.5.  Staff is required to conduct the investigation promptly absent

intervening circumstances beyond the control of the investigator.  28 C.F.R. §

541.5(b).

Following the investigation, the matter is then referred to the UDC for a

hearing pursuant to 28 C.F.R. § 541.7.  If the UDC finds that a prisoner has

committed a prohibited act, it may impose minor sanctions.  *Id.*  If the alleged

violation is serious and warrants consideration for more than minor sanctions, or

involves a prohibited act listed in the greatest or high category offenses, the UDC

refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing.  *Id.*

Greatest Severity category offenses carry a possible sanction of, *inter alia*,

loss of good conduct time credits.  28 C.F.R. § 541.3.  When a prison disciplinary

hearing may result in the loss of good conduct time credits, due process requires

that the inmate receive:  (1) written notice of the claimed violation at least

twenty-four (24) hours in advance of the hearing; (2) an opportunity to call

witnesses and present documentary evidence in his or her defense when doing so

would not be unduly hazardous to institutional safety or correctional goals; and (3)

a written statement by the factfinder as to evidence relied on and reasons for the

disciplinary action.  *See Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974).

In the matter *sub judice*, following an investigation into a May 31, 2012

disturbance at FCC-Forrest City, Petitioner was charged on June 7, 2012, in

Incident Report No. 2313254 with Prohibited Act Code 199, most like 105,

"Conduct which disrupts or interferes with the security or orderly running of the

institution most like Rioting." (Doc. 8-1, p. 3).  The incident was described as

follows:

> On May 31, 2012, at approximately 12:58 p.m., Recreation Staff
> announced a large fight inside the Leisure Center of Recreation.  A large
> group of approximately 95 Hispanic inmates who are housed in A-1 Unit
> identified as being members of the Barrio Azteca Security Threat Group,
> the Mexikanemi Disruptive Group, and Texas Syndicate Disruptive
> Group overpowered the only Staff Member in the Gymnasium, M.
> Jackson, Recreation Specialist, pushing their way through a door,
> breaching the secured area from the gymnasium into the Leisure Center.
> Individual members of the groups began assaulting three Hispanic
> inmates identified as Mexican Nationals, while the others assisted by
> trying to keep staff away through physical force and unity, refusing to
> comply with Staff orders to stop their assaults and actions.   The
> Operations Lieutenant ordered munitions be brought to Recreation.  Less
> Lethal and chemicals munitions were deployed and proved effective in
> stopping the assaults and disturbances.  During the incident three inmates
> exited Recreation and entered the Compound Area in pursuit of two
> inmates identified as members of Tango Security Threat Group and one
> inmate identified as a member of the Partido Revolucionario Mexicano
> Security Threat Group.  The Compound Officer stopped one of the
> inmates and placed him on the ground.  Inmate Gonzalez-Sanchez,
> Manuel, Reg. No. 56918-080, jumped onto the Compound Officer's
> back and began assaulting him.  Inmate Gonzalez-Sanchez was placed
> on the ground then inmates Diaz-Garcia, Johnny, Reg. No. 99233-179,
> and Inmate Rodriguez-Gonzalez, Miguel, Reg. No. 14427-280, began
> assaulting the Compound Officer.  Responding Staff separated and
> removed inmate Gonzalez-Sanchez and inmate Diaz-Garcia from the

Compound Officer and placed them in restraints.  Once control was gained, all inmates in Recreation were placed in restraints.  All inmates involved were photographed, medically assessed, and either placed in the Special Housing Unit or returned to their assigned Housing Units. Inmates Alvarez-Gordoba, Juan, Reg. No. 55354, inmate Andraca-Cardenas, Gilberto, Reg. No. 02383-298, and inmate Santana-Leyva, Javier, Reg. No. 68556-008, were transported to the local hospital for further examination and treatment of injuries they sustained during the assault.  As a result of the actions of each individual involved in the above disturbance, assaults were carried out on staff and inmates.

On May 31, 2012, a roster of A-1 unit was utilized and all inmates were accounted for as being in recreation except for one.  The one inmate was Insuriaga, Francisco, Reg. No. 85807-80 who was scheduled for a medical trip departing the institution at 1:00 P.M. and was secured inside medical at the time of the disturbance.

On June 1, 2012, a review of the vicon video surveillance system was reviewed.  The video clearly shows all inmates who were located inside the basketball gymnasium either participating in the actual breach of the door between the gymnasium and the Leisure Center or tried to push their way out of the gym into the Leisure Center once the door was breached.  With great effort, as indicated on video, staff were able to secure the door between the two areas preventing the remaining inmates who were trying to push their way into the Leisure Center from doing so. It is clear if it had not been for staff being able to secure the door, those inmates who were forced to remain in the gym would have also gained access into the Leisure Center and participated in the assaults/disturbances.

Based on the greater weight of the evidence, it can be concluded inmate Reyes, Roberto, Reg. No. 30105-280 participated in this incident.

(Doc. 8-1, p. 3.)

During the UDC review, Reyes stated "I did not participate."  (*Id.* at 4).  The

UDC referred the matter to the DHO due to the severity of the offense and

4

recommended disciplinary segregation, forty-one days loss of good conduct time, and loss of phone, visits, and commissary privileges. (*Id.*) Reyes was advised of his rights at that time. (Doc. 1-1, p. 1).

The disciplinary hearing commenced on June 14, 2012. (Doc. 1-1, p. 1). At Petitioner's request, counselor D. Lloyd appeared on his behalf. Petitioner stated that he understood all his rights and confirmed that he had 24 hours notice to prepare for the hearing. (*Id.*) In addition, the staff representative indicated that he had no concerns with procedural issues. (*Id.*) Reyes denied the charges against him but did not make a statement. (*Id.*) He requested an inmate witness who did not testify because the testimony proffered did not relate to the incident. (*Id.*) The DHO considered the following documentary evidence:

1.    (2) Photos, Dated 05-31-2012, RE: Reyes #30305-280 & Alvaraez-Gordoba #55354-208

2.    (2) Photos, Dated 06/01/2012, RE: Andraca-Cardenas 02383-298 & Santana-Leyva 68556-008

3.    (162) Photos, dated 05/31/2012, RE: Area incident occurred.

4.    BOP Health Services Clinical encounter Form RE: Santana-Leyva 68556-008, Andraca-Cardenas 02383-298, and Alvaraez-Gordoba #55354-208

5.    Inmate Injury Assessment, Dated 05-31-2012, RE: Reyes #30105-280

6.    Staff Injury Assessments, Dated 05-31-2012, RE: J. Prince, K

Maples, T. Rule, M. Allen, T. Banks, J. Carey, and M. Jackson

7.   Staff memorandum, Dated 05-31-2012, from responding staff

8.   Investigative Report

(*Id.* at p. 2).  The DHO also considered Reyes's statements to the investigating

lieutenant, Officer Davenport, and the UDC, that he did not participate in the

incident, as well as his statement during the hearing that he did not participate and

that the incident report was wrong.  (*Id.* at 3).

After considering the evidence, the DHO concluded that Reyes committed

the prohibited act of aiding and abetting an attempted assault, Code 101A.  (*Id.*)

In support of his finding he stated as follows:

> On May 31, 2012, a roster of A-1 Unit was utilized and all inmates were
> accounted for as being in recreation with one exception, Insuriaga,
> Francisco, Reg. No. 85807-080.  Insuriaga was secured inside medical
> at the time of the disturbance.  On June 1, 2002, a review of the vicon
> video surveillance system was reviewed [sic].  The video clearly shows
> all inmates who were located inside the basketball gymnasium either
> participating in the actual breach of the door between the gymnasium and
> the leisure center or tried to push their way out of the gym into the
> leisure center once the door was breached.  With great effort, as
> indicated on video, staff were able to secure the door between the two
> areas, preventing the remaining inmates trying to push their way into the
> leisure center from doing so.  Had it not been for staff being able to
> secure the door, those inmates who were forced to remain in the gym,
> would have also gained access into the leisure center and participated in
> the assaults/disturbance. You, Martinez [sic], Reg. No. 90650-279, were
> identified as having participated in this incident.
>
> ***

6

I find no merit in your statement you didn't participate and the incident report is wrong.  It is clear, as described by Officer Davenport in the incident report, recreation specialist Jackson was overpowered by members of the Barrio Azteca Security Threat Group, the Mexikanemi Disruptive Group and Texas Syndicate Disruptive Threat Group, in order to gain access through the door from the gymnasium to the leisure center. Though you state you didn't participate, you were identified by Officer Davenport as being assigned to A1 and being in the gymnasium at the time of this incident.  Further, as an inmate assigned to A1 and being in the gym, you were identified by staff as either participating in the actual breach of the door and gaining access to the leisure center, or attempting to push your way out of the gym but were prevented from doing so by responding staff.  Specifically, staff were able to secure the door between the two areas preventing the remaining inmates from gaining access to the leisure center area.  As was evidenced by the investigative report, staff and inmate injury assessments and supporting memorandums, both staff and inmates were assaulted as a result of this incident.  Munitions and additional staff were required before the incident was brought under control.  Santana-Leyva, Reg. No. 68556-008, was transported *via* ambulance due to head trauma and lacerations with what appeared to be multipuncture wounds to the chest and possible seizures.  Alvarez-Gordoba, Reg. No. 55354-208, was transported via ambulance due to head trauma and blurred vision for a CT scan of the head.  Staff received numerous injuries, evaluated by medical staff and transported via private transport to local physician for additional treatment.

Upon your commitment to the BOP, you participated in Admission and Orientation (A&O) wherein you were advised of Bureau of Prisons "BOP" Rules and Regulations and your responsibility to abide by these rules.  You were also provided an A&O handbook which further details prohibited acts.  Your participation in A&O and knowledge of BOP rules and regulations further establishes your culpability.  Aiding and abetting in attempted assault, regardless of the circumstances, is a prohibited act.

Based on the written account of Officer Davenport and the supporting documentation, the greater weight of the evidence supports my finding you committed the prohibited act of aiding and abetting in an attempted

assault, Code 101A.

(*Id.*)

In sanctioning him with a disallowance of forty-one days of good conduct time, sixty days of disciplinary segregation, and 180 days of loss of commissary, phone, and visitation privileges, and a monetary fine, the DHO reasoned as follows:  "The behavior on your part to aid and abet in attempted assault of inmates and staff, is an obvious threat to the safety of those individuals who are the victims of the assault, as well as the overall security of the institution.  This type of behavior cannot and will not be tolerated.  To hold you accountable for your actions, I have sanctioned you as outlined in Section VI.  Hopefully, these sanctions will have significant impact on your future conduct and will deter you from future prohibited acts.  If not, I caution you the Bureau of Prisons believes in, and practices, progressive discipline.  Repetitive behavior of this sort will likely result in even harsher consequences."  (*Id.* at p. 4).

After exhausting all available administrative avenues of review, Reyes filed the instant petition arguing that his due process rights were violated because he was denied adequate notice of the charges against him and the opportunity to call his witness, the DHO was not impartial, the DHO's reliance on a strict liability standard resulted in a finding of guilt based on insufficient evidence, and he was

"subjected to discriminatory discipline."  (Doc. 1, pp. 6-9; Doc. 8, p. 2; Doc. 9, p.

5).

## II.   <u>DISCUSSION</u>

Reyes's claim, that his due process rights were violated in the context of the

disciplinary hearing process, and that these violations resulted in a loss of good

conduct time, is properly the subject of this habeas petition because it directly

impacts the duration of his confinement.  The Due Process Clause of the Fifth

Amendment of the Constitution of the United States provides: "No person shall . . .

be deprived of life, liberty, or property, without due process of law."  U.S. Const.

amend. V.  Federal inmates possess a liberty interest in good conduct time.  *See*

*Wolff*, 418 U.S. at 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir.

1991).

When a prison disciplinary hearing may result in the loss of good conduct

time credits, due process requires that the prisoner receive due process protections:

1) written notice of the claimed violation at least twenty-four (24) hours in advance

of the hearing; 2) an opportunity to call witnesses and present documentary

evidence in his or her defense when doing so would not be unduly hazardous to

institutional safety or correctional goals; 3) aid in presenting a defense if the

inmate is illiterate, 4) an impartial tribunal; and 5) a written statement by the

factfinder as to evidence relied on and reasons for the disciplinary action.  *See Wolff*, 418 U.S. at 564.

### A.     Advanced Written Notice

Reyes argues that his due process rights were violated because "the DHO changed the charge of Code 105 violation to a Code 101A violation without giving [him] adequate notice or an opportunity to respond or prepare for such charge which is fundamentally unfair."  (Doc. 1, p. 8).  This argument lacks merit. As long as an inmate has notice of the facts underlying the charge of which he is found guilty, as is the case here, it is does not matter that he is found guilty of a greater charge.  *See Luna v. Zickefoose*, No. 1:14-CV-1060 (M.D. Pa. Feb. 4, 2015) (citations omitted).

### B.     Opportunity to Call Witnesses

Although *Wolff* affords inmates an opportunity to call witnesses in their defense, it does not guarantee them the unfettered right to call any witness or present any evidence they wish, regardless of its relevance or necessity.  *Wolff*, 418 U.S. at 566–67 (stating reasonable penological needs may limit the right to present evidence).  If a disciplinary hearing is to have any substance, the hearing officer must determine relevance of evidence.  *See Young*, 926 F.2d at 1402 (3d Cir.1991) (discussing *Helms v. Hewitt*, 655 F.2d 487 (3d Cir.1981), rev'd on other grounds,

459 U.S. 460 (1983), aff'd on remand, 712 F.2d 48 (3d.Cir. 1983)).  The BOP

regulations provide that "the DHO will call witnesses who have information

directly relevant to the charge(s) and who are reasonably available.  However, the

DHO need not call witnesses adverse to you if their testimony is adequately

summarized in the incident report or other investigation materials."  28 C.F.R.

§541.8(f)(2).  Moreover, the witness will only be allowed to offer evidence when

doing so would not be unduly hazardous to institutional safety or correctional

goals.  *Wolff*, 418 U.S. at 563–71.

 In the event that a DHO refuses to call a witness, the Supreme Court has

explained that "it would be useful for the [prison disciplinary hearing officer] to

state [his or her] reason for refusing to call a witness, whether it be for irrelevance,

lack of necessity, or the hazards presented in individual cases." *Wolff,* 418 U.S. at

566.

 The record clearly demonstrates that Reyes was afforded the opportunity to

call witnesses in his defense.  However, the witness whom Reyes requested, Inmate

Stigger, was not called based on the following:  "You called Inmate Stigger as a

witness to explain the appeal process.  It was explained by this DHO to both you

and your staff representative unless Stigger was being called to testify concerning

knowledge specifically related to this incident, he wouldn't be called.  It was

confirmed he wasn't going to testify regarding the incident and thereby wasn't

called." (Doc. 1-1, p. 1). The DHO's decision not to allow the witness was clearly

proper given the lack of relevance of the proffered testimony. Reyes's contention

that Inmate Stigger would have testified in support of his defense that the incident

was unjustifiably caused by Officer M. Jackson's deliberate indifference in

opening a locked door, and placing inmates in duress has absolutely no support in

the record. (Doc. 1, p. 6).

### C.    Impartial Tribunal

Reyes also contends that the hearing officer was not impartial. (Doc. 1, p.

7). In the context of prison disciplinary proceedings, due process requires that the

disciplinary tribunal be sufficiently impartial. *Meyers v. Alldredge*, 492 F.2d 296,

305-07 (3d Cir. 1974); *see Wolff*, 418 U.S. 539 (finding disciplinary committee

was sufficiently impartial so as not to violate due process). In order to insure

impartiality, the DHO may not be the victim, witness, investigator or otherwise

significantly involved in the incident. 28 C.F.R. § 541.8(b). The requirement of an

impartial tribunal "prohibits only those officials who have a direct personal or

otherwise substantial involvement, such as major participation in a judgmental or

decision-making role, in the circumstances underlying the charge from sitting on

the disciplinary committee." *Meyers*, 492 F.2d at 306. *Meyers* involved

disciplinary action being taken against members of a prisoners' committee involved in the work stoppage.  During the work stoppage, an associate warden had considerable contact with the prisoners' committee.  Thereafter, the same associate warden served on the disciplinary committee.  The *Meyers* court concluded that the presence of the associate warden on the disciplinary committee denied the prisoners an impartial tribunal.  492 F.2d at 305-07.

In the matter *sub judice*, the DHO did not have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge.  Hence, this argument is without merit.

### D.     Disciplinary Sanctions

BOP regulations authorize the DHO to impose sanctions when an inmate "is found to have committed a prohibited act."  28 C.F.R. § 541.3(a).  Prohibited acts under BOP regulations include Greatest Severity Level Prohibited Act Code 101 "Assaulting any person, or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished."  28 C.F.R. § 541.3, Table 1. The sanctions that may be imposed upon a finding of guilt of a Greatest Severity Level Prohibited Act include, *inter alia*, forfeiture and/or withholding of earned

statutory good time or up to 100% of non-vested good conduct time, and/or

termination or disallowance of extra good time, the disallowance of 27-41 days of

good conduct time credit available for a year, up to twelve months of segregation,

loss of privileges such as visiting, telephone, commissary, movies, and recreation

and a monetary fine. The sanctions imposed upon Reyes were within the range of

allowable sanctions. His argument that his discipline was discriminatory, based

upon his representation that a fellow inmate's misconduct was expunged, is wholly

lacking in merit. (Doc. 1, p. 9).

### E.      Sufficiency of the Evidence

Petitioner also challenges the sufficiency of the evidence. Where the due

process requirements of *Wolff* are met, as is the case here, the decision of the

hearing examiner will be upheld if there is "some evidence" to support the

decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Young*, 926 at

1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process

challenges to prison disciplinary proceedings). The determination of whether the

standard is satisfied "does not require examination of the entire record,

independent assessment of the credibility of witnesses, or weighing of the

evidence. Instead, the relevant question is whether there is any evidence in the

record that could support the conclusion reached by the disciplinary board." *Id.* at

455.  Under *Hill*, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support.  *Id.* at 457; *see also* 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be based upon at least some facts and, if there is conflicting evidence, to be based on the greater weight of the evidence).

Petitioner's sufficiency of the evidence argument is two-fold.  He first argues that Officer Davenport's conclusion that Petitioner participated in the incident, based upon his A-1 housing assignment and presence in the gymnasium "is so 'blatantly implausible' that [it] do [sic] not constitute some evidence of my guilt.  *See Zavaro v. Coughlin*, 420 F.2d, 1148, 1153-54 (2d Cir. 1992)".  Zavaro and more than one hundred other inmates were in the prison mess when a riot broke out.  The evidence against Zavaro was found insufficient in that the "sweeping statements" by the guards could "only be understood to mean that the guards observed very widespread participation in the riot, not that every one of the hundred or so inmates, without exception, took part."  *Zavaro*, 970 F.2d, 1152-53.  Zavaro was merely placed in the mess hall by the guards and there was no evidence to dispute Zavaro's testimony that he remained at his table and did not throw anything.

15

He next argues that the DHO essentially applied a strict liability standard in that he failed to rely on evidence of his knowledge or participation in aiding and abetting in attempted assault. (Doc. 1, p. 8, citing *Teague v. Quarterman*, 482 F.3d 769, 780 (5th Cir. 2007). In *Teague*, the appellate court rejected the DHO's conclusion that trafficking and trading offense did not require prior knowledge of the participants in an unauthorized trust account deposit.

Notably, neither of these cases constitute binding precedent. In any event, unlike *Zavaro* and *Teague*, the DHO in this matter relied on specific evidence, including Reyes's injury assessment form, dated May 31, 2012, which indicated that he was an active participant in the disturbance, memoranda authored by responding staff members, the May 31, 2012 A1 housing roster confirming that Petitioner was housed in the A-1 housing unit and either participated in the actual breach of the door or attempted to push his way out of the gymnasium but was prevented from doing so by responding staff, and a video of the incident confirming all members of A1 housing unit participated in the incident. The DHO also cited to the fact that upon commitment to the BOP, Reyes participated in A&O and that he had knowledge that aiding and abetting in an assault is prohibited conduct under any circumstances. In addition, the DHO considered the incident report, Officer Davenport's investigative report, approximately 162 photographs,

dated May 31, 2012, taken in the area where the disturbance occurred, inmate and staff health services encounter and injury assessment forms.    Despite Petitioner's argument to the contrary, the record indicates that the DHO did not apply a strict liability standard of review but, rather, relied on some evidence in concluding that Petitioner had knowledge of, or participated in, aiding and abetting an attempted assault.[1]

## III.    Conclusion

For the reasons set forth above, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

---

[1]Reyes contends that the DHO's reference to inmate"Martinez" rather than "Reyes" in the body of the DHO's report is evidence that he was not properly identified.  Based on the identification of Reyes in the caption of the report and numerous references to him and his inmate registration number at other points throughout the report, it is clear that the reference to Martinez is simply a typographical error.